## GEORGE B. ZIMPLEMAN

*v.*

## GEORGE F. VEEDER *et al.*

*Filed at Ottawa May 14, 1881.*

1. PLEDGE—*pledgee can not sell note pledged, without authority.* The pledgee of commercial paper, in the absence of any power of sale by contract, can not sell such paper, but it is his duty to collect the same, and apply enough of the proceeds to pay his debt, and return the balance to the pledger.

2. SAME—*sale of under power, passes title from pledger.* If the pledgee of a promissory note, under a power of sale conferred on him, makes a *bona fide* sale to one capable of buying, the sale will pass the title to the note beyond the pledger's reach, although it is sold for less than there is due upon the same.

3. SAME—*sale by pledgee, whether bona fide.* Where the maker of a note pledged for a debt by the payee, negotiates with the pledgee for its purchase at the amount due the latter, which is much less than the face of the note, and the maker is informed of the time of the sale, while the pledger is not, and the maker becomes the purchaser at a formal public sale, and receives the note, this will not be regarded such a sale as the law requires, but rather as a compromise between the pledgee and the maker of the note.

4. SAME—*pledgee can not compromise with maker of note pledged.* The pledgee of a note has the right to collect the same of the maker, but not to compromise with him, and take less than is due on the note. There may be cases, where

the debt is not well secured, that the pledgee may take less than is due, and surrender the note, but he can not do this where the debt is well secured.

5. PURCHASER—*when maker of note may purchase same.* The maker of a note for $1930, secured by mortgage on real estate, who, on selling the mortgaged premises, covenants with the purchaser to pay such note, can not become a purchaser of the same for $1120 at a pledgee's sale, under a previous arrangement with the pledgee to buy it, and thus acquire a title to the note, but on a foreclosure of the mortgage the sum paid by him for the note will be deducted from the sum due from him thereon.

6. NOTE—*possession as evidence of payment.* Although possession of a note by the maker may be regarded as *prima facie* evidence of payment by him, its production on the hearing of a bill to foreclose a mortgage securing it, by a grantee of the maker, where the proof shows that it was not paid, but was bought by the maker at a pledgee's sale for less than the amount due thereon, will not avail the defendants to defeat the foreclosure, but a decree will be rendered for the sum due on the note, less the sum paid at its sale as a pledge.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. GEORGE W. SMITH, and Mr. R. A. CHILDS, for the plaintiff in error.

Messrs. ALLEN, BARNUM & ALLEN, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by George F. and Francis H. Veeder against John E. Burton, Lucretia D. Burton, John W. Ulm and George B. Zimpleman, to foreclose a deed of trust on a certain tract or lot of land in Irving Park, Cook county, executed by the Burtons to secure the payment of a note given by them to Francis H. Veeder, for the sum of $1930. The note was dated September 12, 1877, and was due in sixty days, with interest at ten per cent per annum. The trust deed was executed on the same day, and was recorded on the 18th day of September, 1877. This note and deed of trust, a short time after they were executed, were

pledged by the Veeders to John W. Ulm, to secure a loan of $1000, due in sixty days after September 16, 1877. The contract under which the note and deed of trust were pledged to Ulm, authorized and empowered him, in case default was made in payment of the $1000 when due, to sell the Burton note and deed of trust at public or private sale, without advertising the sale or giving any notice to the Veeders.

It also appears, that the Burtons, on the 18th day of September, 1877, conveyed to Zimpleman the Irving Park property, by general warranty deed of conveyance, in which they recited the existence of the trust deed for $1930, and covenanted in the deed to pay the same. Both Veeder and Burton failed to pay their notes when they became due, and Ulm, on the 30th day of January, 1878, sold the Burton note at public vendue, and at such sale Burton became the purchaser for $1120—the amount then due Ulm from the Veeders on the loan they had obtained from him. Upon making the sale, Ulm delivered to Burton his note, and the deed of trust given to secure the same.

On the hearing, the court rendered a decree ordering the sale of the premises for the amount of the $1930 note, less the amount of $1120, which Burton paid at the time he procured the note from Ulm.

This was a pledge of commercial paper to secure a debt, and had there been no special power of sale in the contract under which the note was pledged, it is clear, as held in *Union Trust Co.* v. *Rigdon,* 93 Ill. 458, that Ulm could not have sold the Burton note, but, on the other hand, it would have been his duty to collect the note, and apply enough of the proceeds to pay his debt, and return the balance to the Veeders. But in the contract under which Veeder pledged the note to Ulm, express authority is conferred upon the latter, on default of payment of his note when due, to sell the Burton note at either public or private sale, and that, too, without notice. If, therefore, Ulm made a *bona fide* sale to a person capable of buying, so far as the Veeders are con-

cerned the title to the note and mortgage would be gone beyond their reach,—in other words, had Ulm, after having given proper notice, sold the note at public vendue, and it had been purchased by a stranger to the transaction, the title to the note would pass to the purchaser under such a sale, although no greater sum was bid than Burton paid at this sale.

The right of the Veeders, then, to maintain this bill to foreclose the deed of trust, must depend entirely upon whether the sale was *bona fide,* and whether Burton could properly buy in his own paper. So far as appearance was concerned, the sale made by Ulm seemed to have been fairly made, but the evidence, on close examination, seems to show otherwise. Ulm admits that there was negotiation between him and Burton, in regard to Burton buying the note at private sale. He says: "Burton asked me if I would sell the note to him. I told him, not at private, but public sale, where Veeder could have the same chance with him." Veeder had no knowledge when the note would be sold, while Burton was apprised of the time and place, and it is evident that he knew, and that it was understood between him and Ulm, that he could have the note for the amount that Veeder owed Ulm thereon, but a formal sale, at public vendue, would have to be made.

We do not regard the transaction as a sale such as the law requires, but rather as a compromise between the pledgee and the maker of the note which was pledged. Ulm had the undoubted right to collect the note of Burton, but we do not understand that he had any right to compromise, and take less than was due on the note. There may be cases, where the debt was not well secured, that the pledgee might be justified in receiving a less amount than was due, and surrender the pledged paper; but where the claim held in pledge was well secured, as the evidence shows this was, the pledgee has no right to enter into a compromise, and give up the claim for less than is due thereon. Story on Bailment, sec. 321; *Union Trust Co.* v. *Rigdon, supra.*

Was Burton a purchaser in good faith? He had agreed to pay the full amount of this note. The note itself required him to do this. Again, he inserted a covenant in the deed, when he sold the property embraced in the deed of trust which secured this note, that he would pay the note. He knew the contract under which Ulm held the note. Under such circumstances we do not think he could acquire title to the note by purchase from Ulm.

There are, doubtless, cases where the maker of commercial paper may, where the same is being sold, purchase and acquire the title to such paper. A note may be sold by an administrator, under the order or direction of court, or by an assignee of a bankrupt, by direction of the creditors,—in these and other like cases, we are aware of no reason which would preclude the maker of paper thus sold from purchasing at the sale.

It is, however, claimed, that Zimpleman is entitled to protection, as he held the note in his possession, marked paid. How he acquired the possession of the note is not shown by the evidence. All that is shown by the proof is, that Burton bought the note of Ulm, paying therefor $1120,—the amount for which it was held in pledge,—and on the trial it was produced by Zimpleman. It is true, possession of a note by the maker may be regarded as *prima facie* evidence of payment by him; but that rule can not help the defendants here, because the evidence shows, beyond a question, that the note was never paid. The fact that Burton, after he acquired the possession of the note, may have marked it paid, and then delivered the note to Zimpleman, did not change the relative rights of the parties. Had this note been in the possession of Burton when he sold to Zimpleman, and had he purchased in the faith that Burton had paid the note, a different question would have been presented. But here, so far as appears, Zimpleman did no act whatever on account of having received the note. He paid nothing, gave up nothing, and no import-

ance can be attached to the fact that the note was produced by him on the trial.

It clearly appeared, from the evidence, that the note had never been paid, and as Burton was not a *bona fide* purchaser, the decree of foreclosure was right, and it will be affirmed.

*Decree affirmed.*