## DE CLARK v. WATERS.

PLEDGE — COLLATERAL SECURITY — EVIDENCE — PROMISSORY NOTES — PAYMENT.

1. Where the holder of notes payable "on or before" maturity endorses and delivers them to his creditor as collateral for his own note, the maker has the right to pay them in the hands of the Justice of the Peace to whom they have been delivered by the collateral holder, together with the principal note, in garnishment proceedings in a suit against his said debtor, the said maker of the collateral notes being also summoned as garnishee; and it is immaterial whether the justice has jurisdiction in said garnishment proceedings or not, so far as the right to make such payment is concerned.

2. The maker of notes endorsed by the payee as collateral may pay them to a Justice of the Peace who has possession thereof, and is entitled to credit therefor as against the payee, where said notes are payable "on or before" a certain date, although the notes are not due, and the justice may have obtained the notes in a garnishment proceeding so irregularly prosecuted as not to confer jurisdiction, and so that the justice had no legal authority to require payment of such maker.

3. Ordinarily the pledgee of a promissory note as collateral security is not permitted to compromise with the maker, and accept less in its discharge or satisfaction than the face value of the paper. Only in extreme cases will such a compromise be sustained on the ground that the same is advantageous to all parties because the maker is insolvent, and the debt is insufficiently secured.

4. Where notes held as collateral are surrendered to the maker by the pledgee at a sum considerably less than their face value, the pledgor has his election to bring an action against the pledgee in tort for wrongfully disposing of the collateral, or against the maker to recover the residue of the face of the notes so surrendered.

5. A compromise by the pledgee of notes as collateral security with the maker and the acceptance of less than their face value in discharge thereof, by and with the consent of the pledgor, is binding upon the latter.

6. Where the pledgor testified that he did not consent to a compromise made between the pledgee and the maker of collateral notes, and it is attempted to show such consent by the

introduction of a letter written by the pledgor to the maker; and the terms of the letter are too vague and uncertain to authorize a finding that the pledgor consented, *Held,* that the evidence was insufficient to show consent.

[Decided July 26, 1901.]

Error to the District Court, Sheridan County, Hon. David H. Craig, Judge of Third District, presiding.

This was an action instituted by W. P. Waters against F. A. DeClark for the cancellation of a chattel mortgage, the plaintiff claiming to have paid the debt secured thereby. Defendant denied such payment and by cross-petition sought foreclosure of the mortgage. The notes secured by the mortgage had gone into the hands of third persons as collateral security, being endorsed for that purpose by the defendant. Plaintiff claimed to have paid them to the holders. In the case of certain of the notes plaintiff had settled for less than face value, and others had been paid to a Justice of the Peace, who had summoned plaintiff and the collateral holder as garnishees in a suit against the payee, and ordered the delivery and payment of the notes. It was, however, contended that the garnishment proceedings were not properly instituted and prosecuted, and that such proceedings were void for want of jurisdiction. Judgment was rendered for the plaintiff; and the defendant prosecuted error.

*J. F. Hoop* and *W. S. Metz,* for plaintiff in error.

Waters being the maker of the six promissory notes held by Trumbower as collateral security, could enter into no agreement or compromise with Trumbower to settle said notes for less than their face value, and Trumbower, holding the same as collateral, had no legal authority to compromise the same with the maker, Waters, for any sum less than that due thereon, to the detriment of DeClark. DeClark has a choice of remedies; he can proceed against Trumbower for a violation of his agreement to hold the notes as collateral, in compromising with said Waters, or he may proceed against Waters for the amount actually due upon the notes and re-

cover the balance, after deducting the amount paid by Waters to Trumbower. (Colebrook on Coll. Sec., Sec. 96; Garlock v. James, 12 Johns., 146; Woods v. Mathews, 73 Mo., 497; Griggs v. Day, 136 N. Y., 152; Debuy v. Clark, 12 Ind., 427; Hawks v. Hinchcliffe, 17 Barb., 492; Union Trust Co. v. Rigdon, 93 Ill., 471; Zimpleman v. Veeder, 98 Ill., 613; Stevens v. Hulbert Bank, 31 Conn., 147; McLenore v. Hawkins, 46 Miss., 715.)

To entitle the record of the garnishment proceedings to be admitted in evidence, there should have been some showing therein made that service of summons had been had upon the defendant. That did not appear. The garnishment notice seems to have been issued by the justice himself. The statute authorizes the officer serving the same to issue such notices, but confers no such power on the Justice of the Peace. (R. S., Sec. 4420.) The record does not disclose service upon Waters, the maker of the notes. He could not voluntarily appear and thereby confer jurisdiction on the court over the funds in his hands belonging to his creditor. (Wells v. Am. Ex. Co., 11 N. W., 537; id., 12 N. W., 441; id., 55 Wis., 23; Steen v. Norton, 45 Wis., 412.) But the judgment itself shows that it is not sufficient to require or warrant payment by Waters of the amount of the notes to the justice. There is no finding that he is indebted to defendant; nor is there any judgment against him as garnishee. It lacks every essential of a judgment.

*Appelget & Mullen,* for defendant in error.

A compromise made between the pledgee of commercial paper and the maker, with the consent of the pledgor, is valid and binding upon the latter. (Colebrook Coll. Sec., p. 182; Thayer v. Putnam, 12 Met., 297; Morris Canal & Bank Co. v. Lewis, 12 N. J. Eq., 321; Pence v. Gale, 20 Minn., 257; Randolph v. Merchants Bank, 9 Lea, 63.) The evidence shows the consent of the defendant to the settlement between Waters and Trumbower.

The docket enrties of the justice contain everything required by the statute. (R. S., Sec. 4330.) Hence, the judg-

ment is *prima facie* valid, and the burden is on the defendant to show want of service upon him. The contention is not that service was not in fact had, but that the docket fails to show the same. But if it be admitted that the record of the justice should not have been admitted, the error is not prejudicial. The notes were endorsed by the defendant—the payee—"for security." This is in effect a general endorsement (Tiedeman on Com. Paper, 443), and justified the payment of the notes in the hands of any person the maker might find them. (Tiedeman on Com. Paper, 642; Williams v. Keys, 90 Mich., 296; Stark v. Oleson, 44 Neb., 658.) The person in possession of the paper payable to bearer, or endorsed in blank, is presumed to be the owner of it. (Tiedeman Com. Paper, 524.) The payment of the notes to one in possession under apparent title is an acquittance of Waters. His possession of the notes is *prima facie* evidence of payment. (Lipscomb v. DeLemos, 68 Ala., 592; Smith v. Harper, 5 Cal., 329; Conway v. Case, 22 Ill., 127; Chandler v. Davis, 47 N. H., 462.) Such presumption may be rebutted, but no attempt to do so was made.

POTTER, CHIEF JUSTICE.

W. P. Waters instituted this action in the District Court for the cancellation of a certain chattel mortgage executed by him to the defendant below, F. A. DeClark. The mortgage was given to secure the payment of nineteen promissory notes, each payable "on or before" a certain time therein designated; the first note maturing three months after its date and the last note falling due fifty-five months after date. They were dated August 12, 1897. The plaintiff alleged in his petition that he had paid all the notes in full, and had tendered to defendant an amount sufficient to pay the fees for releasing the mortgage on the records, and had requested its discharge.

The answer of defendant controverted the allegations of payment, and alleged that no part of three notes for one hundred dollars each, and but a portion of six other notes

for one hundred dollars each, had been paid; and by way of cross-petition, alleging a balance of $704.33 unpaid, a judgment was sought against plaintiff for the amount, and a foreclosure of the mortgage was prayed, by a sale of the mortgage property, under a decree of the court. A reply was filed setting up certain facts deemed to constitute a full and complete payment of the particular notes which were placed in controversy by the answer. The action was tried to the court, and plaintiff recovered judgment, the court finding the debt to have been paid; and it was adjudged that the mortgage be cancelled.

The controversy arises over nine notes, each for one hundred dollars, and they may be placed in two series, one series consisting of three notes and the other of six.

It appears that the three notes had been endorsed to one J. B. Bell as collateral security for an indebtedness of the defendant below, the payee named in the notes, to Bell. A creditor of defendant having procured judgment against him in justice court, the plaintiff, Waters, and Bell were summoned as garnishees, and the proceedings resulted in an order that Bell deliver into court the principal note and the collateral notes held by him, and that Waters pay the amount of his notes (the same being the ones held by Bell as collateral) into court. That order was complied with by both Bell and Waters. The latter paid his notes December 8, 1898, and they were surrendered to him.

Plaintiff in error, defendant below, assailed in the trial court, and assails here, the jurisdiction of the justice in the garnishment proceedings, one ground of the attack being that no execution was outstanding in the hands of the officer serving the garnishee notice; and it is contended that the defect is a jurisdictional one. Hence, it is urged that the payment by Waters was not lawfully required in the proceedings and not binding upon DeClark. The same question was presented in the case of DeClark v. Bell, this day decided, but we held it unnecessary to determine it, and the same condition exists in this case.

The notes were endorsed by the payee, DeClark, and, together with his note for which they were held by Bell as collateral, were in the possession of the justice, where Waters found and paid them. It is immaterial whether or not he was legally compelled as garnishee to pay them to the justice. They were payable at any time he saw fit to pay them, as they were by their terms payable "on or before" the time designated for their maturity. The justice being in possession and control of them, as well as of the principal note for whose payment they were delivered and held as collateral, Waters is to be protected in paying them, irrespective of the fact that he was summoned as garnishee, and possibly induced by that fact to pay them at that particular time. If it be admitted that the garnishment proceedings were so defective as to preclude Waters from availing himself of them, the fact remains that he had a right to pay the notes to the person who held them, especially when the holder also had in his possession the principal note for which they were collateral. We are, therefore, not called upon to determine whether or not the justice had jurisdiction in the garnishment proceedings.

The facts as to the remaining six notes in controversy are as follows: DeClark, the defendant below, had assigned them to one Trumbower as collateral security for a note given to Trumbower by DeClark. With knowledge that they were held by Trumbower as collateral security, Waters obtained the notes by paying Trumbower, at the latter's request, the sum of four hundred and fifty dollars. That payment, and the surrender of the notes thereon to him, Waters insists, amounted to a full and complete payment, and exonerated him from all further liability. He does not rely solely upon the fact of payment, but his contention is that the settlement of the notes at a discount was made with the consent of DeClark. There seems to be no question upon this record but that the notes were amply secured and worth their face value. Waters is not shown to have been insolvent, and no reason appears for Trumbower's surrender of the notes for less than their face value, unless it may have been that he desired the money, and possibly that the notes had not matured.

Ordinarily the pledgee of a promissory note as collateral security is not permitted to compromise with the maker and accept less in its discharge or satisfaction than the face value of the paper. There may be instances where such a settlement will be upheld, as where by reason of the fact that the debt is insufficiently secured and the maker is insolvent, a compromise is advantageous to all parties; but, according to all the authorities, it will be sustained only in extreme cases. (Colebrook on Col. Secur., 96; Jones on Pledges, 716; Wood v. Matthews, 73 Mo., 479; Garlock v. James. 12 Johns., 146; Depuy v. Clark, 12 Ind., 427; Union Trust Co. v. Rigdon, 93 Ill., 471; Zimpleman v. Veeder, 98 Ill., 613.) Where notes held as collateral are surrendered to the maker by the pledgee at a sum considerably less than their face value the pledgor has his election to bring an action against the pledgee in tort for wrongfully disposing of the collateral, or against the maker to recover the residue of the face of the notes so surrendered. (Colebrook Coll. Secur., 96; Zimpleman v. Veeder, 98 Ill., 613.) The case last cited is, in some respects, quite similar to the case at bar. A note and deed of trust securing it having been pledged as collateral security, the pledgee sold the note to the maker for a sum about one-third less than its face value, and delivered to the maker the note and deed of trust. The pledgors brought suit to foreclose the deed of trust, and a decree was entered in their favor ordering a sale of the premises for the amount of the debt less the sum paid to the pledgee by the maker when the latter procured the note; and the decree was affirmed by the Appellate Court.

A compromise made with the consent of the pledgor is, of course, binding upon him. In this case it was attempted to show that the pledgor, DeClark, consented that Waters, the maker, might settle the notes with Trumbower, the pledgee, at a discount. Waters testified that in making payment he relied upon a certain letter received by him from DeClark. That letter was introduced in evidence. It is as follows:

"Big Horn, Wyo., Nov. 3, 1889.

"W. P. W.:—Yours just received. I don't know what the law is on notes as security. There is 2 sent over by Mckenzie of Shell, but he has to go to expense of foreclosure before he gets them, as he has notified me to hold. I have receipt that interest is all paid on my notes and only $1.50 or $1.25 is due. Wife is in Ia. and has perhaps sent Trumber the money, as she has arranged for $500.00 there, and she is turning over notes taken up as security. May take her few days, as has to do it all through the lawer (lawyer) there. We are having house plastered and man waiting on me, so will stop. Huff, the man in saloon, started off his cattle 3 days ago. *Trumbower is good for any offer he makes, but of course he will have to account for interest acknowledged paid and only amount due.* Later. Just had to stop and man in says it will take Huff and Spears 10 days to get back.          (Signed)     F. A. DeClark."

It must be conceded, we think, that the letter not only contains no explicit consent that Waters may settle his notes for less than their face value, but that the language used is far from clear. The expression, "Trumbower is good for any offer he makes," is perhaps clear enough standing alone, and capable of easy comprehension when applied to certain transactions. But we think it falls short of amounting to a consent that Trumbower, the pledgee, and Waters, the maker, might settle the collateral notes at a sum less than their face value. But in view of the entire contents of the letter it is all the more difficult to construe that language, or any other employed in the letter into such a consent. In the first place the writer commences by saying that he is ignorant of the law regarding notes held as collateral security; rather indicating by that statement an intention to retain all rights that the law gave him; and that intention seems to be indicated also by the observations as to the amount for which Trumbower would be obliged to account. What was intended to be expressed by the words "and only amount due," it is quite impossible to determine by reference alone to the letter. It

might allude to the amount due upon the principal debt, or upon the notes held as collateral. The words immediately preceding, viz., "He will have to account for interest acknowledged paid," probably have reference to the interest the writer had paid on the principal indebtedness, since, in an earlier part of the letter, he had mentioned that matter. Again, the writer alludes to an expectation on his part that the money to pay his debt to Trumbower might have been already sent to him by his wife, then in Iowa.

The letter might be better understood, possibly, did we know the contents of the letter to which it was an answer. Unfortunately, however, the record leaves us entirely in the dark as to that. DeClark testified that the letter written him by Waters had been destroyed. Waters was asked by his counsel to state what he wrote, and his answer to the question was as follows: "I wrote him that Mr. Trumbower had written me, and that I didn't know that he held any notes against me. He wrote and told me that DeClark owed him $550.00, and that he held these notes as collateral security and that he wanted his money. He says I will make you a proposition, if you want to take these notes up. I accepted the proposition and paid the notes; the notes were payable on or before, at any time." It is obvious that, so far as the letter of Waters to DeClark is concerned, all that Waters testified about its contents was that he informed DeClark that Trumbower had written him, and he did not know that he held any notes against him. The rest of the answer relates to the communication of Trumbower to Waters, and that the latter accepted the former's proposition. If DeClark was informed as to the nature of that proposition, the answer does not disclose it, nor does the testimony elsewhere disclose it. DeClark testified that he did not consent to any settlement of the notes by Waters at less than their face value, and he is positive in that assertion, except, in answer to one of the questions as to whether he had consented to such a settlement, he replied: "Not if I should lose anything, no, sir." He admitted that Waters had

written him that he had an offer from Trumbower as to the notes, or something similar; and was then asked: "And that Trumbower had offered them to him at a discount?" He answered: "Don't know anything about that." He was then asked: "Didn't he so write you?" and his answer was, "I have no remembrance of it." He continued, upon further cross-examination, to deny that he had any information that the offer of Trumbower related to a settlement at a discount.

It may be that the letter of Waters did not mention the fact of a proposed discount. Waters does not testify that it was mentioned, while DeClark's testimony is to the effect that it was not.

The testimony of Waters is peculiarly cloudy whenever he refers to this matter of consent. For example, on cross-examination, after stating that the letter from DeClark introduced in evidence was the only communication the witness had received upon the subject, he was asked: "That is the only direction he has given you with reference to these notes?" and his reply was: "No, sir; he told me that whatever contract Trumbower made with me he would account for personally. He said that to me on the street and in my store." Now, whether it is intended to be asserted by that answer that Trumbower would account for any contract he made, or that DeClark would do so, we are quite at a loss to determine. The matter was not followed up by further questioning by either counsel; nor does it appear whether the remark attributed by the witness to DeClark was made before or after the settlement. But on direct examination Waters testified that he relied upon the representations of the letter in accepting the proposition of Trumbower.

In our opinion, the expressions of the letter are altogether too vague and uncertain to authorize a finding that DeClark consented to the transaction between Waters and Trumbower. Upon the record before us that letter stands totally unexplained, while the writer of it testifying as a witness

positively denied any consent on his part, and, indeed, any knowledge that a discount was proposed. Whether, on a new trial, the matter is capable of being made more certain, we, of course, cannot know; but we are convinced that the defendant in error has upon this record failed to establish that his settlement with Trumbower was made with the consent of DeClark.

Our conclusion is that upon the three notes held by Bell, and paid by Waters to the justice of the peace, there is no further liability on the part of Waters, and, in respect to those notes, there is no error in the judgment. As to the six notes held by Trumbower, the plaintiff in error, defendant below, is entitled to recover thereon, less the amount paid by Waters to Trumbower. That is to say, Waters is liable for the residue of the face of those notes, after deducting the actual amount he paid on them to the pledgee, Trumbower. Hence, in our judgment, the court erred in finding said six notes paid in full, and in adjuding a cancellation of the mortgage. For that error the judgment must be reversed and the case remanded for a new trial.

Whether the plaintiff in error is entitled to a foreclosure of the mortgage in advance of the maturity of the notes, upon the facts, or the allegations contained in his answer, is a matter not decided, as it is not involved in the case now here.                                    *Reversed.*

Corn, J., and Knight, J., concur.