GEORGE E. HART v. W. C. TYRRELL ET AL.

Decided October 21, 1904.

**Note—Pledge—Conversion of Collateral.**

A bank held a note and collateral pledged to secure its payment, it being understood that upon the dishonor of the note the collateral might be sold without notice to the maker. The note not being taken up at maturity the bank, upon payment by a third party of the amount due thereon, indorsed it without recourse and turned it over to the purchaser, together with the collateral, but without foreclosing its lien thereon and upon the express understanding that it did not undertake to sell the collateral. Held, that such purchaser by refusing to surrender the collateral to the pledgor and by asserting title in himself, became guilty of conversion and liable for the value of the securities at the time of their conversion.

Appeal from the District Court of Jefferson. Tried below before Hon. A. T. Watts.

*Jackson, Hightower & Lipscomb,* for appellant.

*L. A. Carlton* and *E. E. Townes,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by George E. Hart against W. C. Tyrrell and W. C. Tyrrell, Jr., to recover certain securities or their value. The securities were alleged to have been the property of plaintiff, to have been held by Tyrrell, Sr., as assignee for the security of a note also assigned to him, and the latter having transferred to his son, Tyrrell, Jr., the securities in question for a sum equal to the balance due on the note, which is alleged to be much less than their value.

The transaction is assailed on the ground that the attempted sale of the collateral was a nullity and amounted to no sale. That it was void because no diligence was used to sell the securities at their market value and thus protect the interest of the pledgor, and further that the transfer of the collaterals was a fraud upon plaintiff perpetrated by the two Tyrrells.

A prayer for injunction resulted in an issuance of a temporary writ restraining the Tyrrells from further transferring the collateral.

To these pleadings exceptions were interposed and pleas in bar consisting of general denial and averments that the sale was made by the bank direct to Tyrrell, Jr., and the note marked paid. It was further specially pleaded in defense that if it should be found that defendants, or either of them, actually bought the note from the bank, that by virtue of that sale defendants acquired the bank's right to dispose of the collateral at private sale and it had been so done fairly and for an adequate price.

All exceptions were overruled, trial was had to the court and judgment rendered in favor of defendants, and the injunction dissolved. Hart has appealed.

The facts consist of the testimony of Hart, Norvell and Tyrrell, Sr.,

and the note with its indorsements and a writing conferring upon the pledgee of the collaterals the power of sale without notice. It appears without dispute that Hart, a considerable time prior to the transaction complained of, borrowed from the American National Bank of Beaumont $10,000, evidenced by Hart's promissory note payable in ninety days, indorsed for accommodation by Tyrrell, Sr., and further secured by collaterals consisting of choses in action and stock in corporations. This pledge was evidenced by writing empowering the bank upon dishonor of the note to sell the collaterals at public or private sale without notice to the maker. The proceeds were to be applied to the discharge of the note, the balance, if any, to be turned over to Hart.

This note was a renewal of previous notes, the evidence of the debt having been renewed from time to time at the instance of Hart. The original amount had been reduced by sale of part of the collaterals and otherwise, so that at the date of the transfer to Tyrrell the sum due thereon was only $8388.91.

At the time this note fell due Hart was in Sour Lake, Texas, and he was there notified by letter that unless it was paid at maturity or else reduced to $5000 the collateral would be sold as contemplated by the contract.

The indorser, Tyrrell, Sr., was notified by the bank at the same time and payment demanded of him. He thereupon wrote Hart the facts and induced the bank to wait until the 29th of July before taking action. To neither of these letters did Hart reply in writing, but sent a message to the effect that he was engaged in a business deal which would enable him to pay the note.

Not hearing from Hart, Tyrrell, Sr., demanded the exhaustion of the collateral before proceeding against him, he stating and it being shown that he had not the ready money to take up the note. On the night of the 28th of July, 1903, Tyrrell, Jr., arrived in Beaumont, and having some idle money was advised by his father to make the purchase from the bank. The officials of the bank stated to Tyrrell, Sr., that they would sell out to anyone who would pay the face of the note, but that they would not undertake to sell the collateral, as they did not want to get into any trouble. Thereupon on the 29th of July the bank indorsed the note to Tyrrell, Sr., without recourse on the bank, accepting Tyrrell, Sr., check indorsed by Tyrrell, Jr., for the amount due on the note and turned over the note and collateral to him. Tyrrell, Sr., testifies that he was acting as agent for his son and we treat the statement as a fact. He further states that upon the arrival of his son he got the latter to buy the note and collateral. Norvell, the bank president, states that the note was indorsed to Tyrrell without recourse in pursuance of special instructions to the cashier. Though the check to the bank was signed by Tyrrell, Sr., the money paid the bank belonged to Tyrrell, Jr., except about $388 which his father loaned him.

On the same day, but after the consummation of this transaction, Hart arrived in Beaumont and went direct to the bank, where he was

informed by the officials that he was too late and advising him of the sale. He then went to Tyrrell, Sr., who told him the collaterals had been bought by his son. Thereupon Hart protested, but said, "If that is the case I am entitled to my note." Whereupon Tyrrell, Sr., marked it paid in full and delivered it to Hart. The latter thereupon sought a lawyer to ascertain his rights and by August 3d had instituted this suit. He tendered the sum due to Tyrrell, Jr., and demanded his securities but the tender was refused.

That the value of the collateral was substantially more than the face of the note and no effort was made to secure a greater amount than was paid by Tyrrell, Jr., is manifest from the record. It is also manifest that the Tyrrells intended to and supposed they were purchasing the collaterals outright, but it is equally clear that the purpose was not effected and that Tyrrell, Sr., in his negotiations with the bank as agent for his son was so advised by a previous conversation with Norvell as well as the character of the transfer. The bank did not intend to and did not foreclose their lien upon the collateral but carefully avoided such a course. The legal effect of all this is inevitable. The right to redeem by payment of the note and interest remains in Hart. Tyrrell, Jr., is the owner of the note and holds the collateral by such right as he acquired from the bank. This includes at least the implied power to sell but imposes also the duty to secure a fair price, inasmuch as in exercising the power he would be a trustee for Hart.

This power he has not exercised except as to a part of the collateral. As to the remainder, by refusing to surrender the collateral to Hart upon tender of the amount due, and asserting absolute ownership in himself, he is guilty of conversion and liable to Hart for the value of the securities at the time of such conversion. The issue of estoppel or ratification is not raised by the evidence.

The judgment of the court below is therefore reversed and the cause remanded, with instructions upon another trial to inquire into the value of the collaterals so converted and to render judgment in favor of Hart for the securities, if he is content to accept them, or else for his damages to be ascertained under well settled rules of law, on a tender by Hart of the balance due upon the note.

*Reversed and remanded.*

ON MOTION FOR REHEARING.

GILL, ASSOCIATE JUSTICE.—Counsel for appellees appear to have failed to understand the grounds upon which we reversed the judgment in this cause and request among other things a more definite statement.

We supposed we had made it plain that in our judgment the undisputed facts showed that whatever the appellees wished or intended the thing that was actually accomplished was a sale by the bank of the note and collateral, the negotiations being made through W. C. Tyrrell, Sr., for the use of his son. It is true that both Tyrrell, Sr., and Norvell,

the president of the bank, speak loosely of the sale of the collateral, but the facts established by all the testimony without question from any source was that Norvell during the very discussion that resulted in the transfer told Tyrrell (in response to a proposition to buy the collateral for his son) that the bank did not want to get into any trouble about it and that they would transfer the note without recourse and Tyrrell could do as he pleased with it. In pursuance of this Norvell instructed the cashier to transfer the note without recourse which was done. Now of course if the bank had sold Hart's collateral for enough to satisfy the note it should have been retained by the bank, marked paid and surrendered to Hart. This W. C. Tyrrell, who was an officer of the bank, must have known. But if more is asked what can render the matter more conclusive than that the Tyrrells, if the collateral had become suddenly worthless, could nevertheless have sued Hart upon the note assigned to them and reduced it to judgment. In addition to all this even if it be conceded that the prior negotiation looked to a sale and not an assignment of the note the bank officials had the right to change their purpose at the last moment and this was manifestly done. On page 41 of the record Tyrrell, Sr., speaks of his son's purchase of the *note,* and on page 42 says he did not know whether they had transferred the note to him or to his son. He admits that if they had been making a sale of the securities they would have marked the note paid. On page 39 Tyrrell, Sr., says, "My son arrived from Iowa Tuesday night and he had $8000 and I got him to buy the note and take the security and he paid it with his check."

In view of all this we think there can be no question as to the form the transaction finally assumed or the legal effect of the facts. We also adhere to the opinion that the value of the collateral was in excess of the balance due on the note, but that question we have relegated to the jury. As the matter now stands the adjustment of the rights of the parties is a very simple task. The motion for rehearing is overruled.

*Overruled.*

Filed November 21, 1904.