TEXAS & PACIFIC RY. CO. v. J. W. HEMPHILL.

Decided March 11, 1905.

**1.—Railroads—Safety of Steps of Freight Caboose.**

Evidence considered, and held to show that steps of the kind used on a freight-train caboose, known as the "Dinkey caboose," are, when not out of repair, reasonably safe for the use of railroad employes.

**2.—Same—Assumed Risk.**

Where a railroad employe of many years' experience fell at night from the steps of a "Dinkey caboose," which were in good condition, and was injured by the fall, such result must be held as either an accident caused by his own negligence or as a result within the assumed risks of his employment.

**3.—Same—Ordinary Care by Employe.**

If the employe did not know that the caboose on which he was riding was a "Dinkey caboose," with steps constructed differently from the old-style caboose, he should, in the use of ordinary care, and since he knew that the "Dinkey caboose" was more or less in use on that road, have ascertained the character of the step before going upon it.

Appeal from the District Court of Parker. Tried below before Hon. J. W. Patterson.

*H. C. Shropshire,* for appellant.—A servant can not recover for injuries which result from his failure to look for defects or dangers in the place of work, or appliances, which are obvious, and which he ought to have known and foreseen. International & G. N. Ry. Co. v. Story, 62 S. W. Rep., 132; Rogers v. Railway Co., 76 Texas, 502; Railway Co. v. Schwabbe, 21 S. W. Rep., 706; Nix v. Railway Co., 82 Texas, 477; Railway v. Lemon, 83 Texas, 146; Hildenbrand v. Marshall, 69 S. W. Rep., 492; Missouri, K. & T. Ry. Co. of Texas v. Dyer, 75 S. W. Rep., 930; Railway Co. v. Barrett, 72 S. W. Rep., 884; Ft. Worth Stock Yards v. Whittenburg, 78 S. W. Rep., 363; Horton v. Ft. Worth Packing & Provision Co., 76 S. W. Rep., 211; Railway Co. v. French, 86 Texas, 96; Railway Co. v. Wood, 35 S. W. Rep., 879.

Where a physical situation is open to the observation of the servant,

and apparent to him, and the probability of injury is as obvious to him as to the master, he must be held to have assumed the risk if he engages in the work. Ft. Worth Stock Yards Co. v. Whittenburg, 78 S. W. Rep., 363; Horton v. Fort Worth Packing & Provision Co., 76 S. W. Rep., 211; Railway Co. v Dyer, 75 S. W. Rep., 930; Railway Co. v. Spellman, 34 S. W. Rep., 298; Railway Co. v. French, 86 Texas, 96; Railway Co. v. Lempe, 59 Texas, 22; Railway Co. v. Walker, 76 S. W. Rep., 228; Parish v. Railway Co., 76 S. W. Rep., 235; Rogers v. Railway Co., 76 Texas, 502.

*Howard, Martin* and *McCall & McCall* for appellee.—1. Where the defects in the appliances used are obvious but the danger is not apparent plaintiff may recover. Plaintiff did not notice that the caboose was a dinkey when he got on to return home. So also, three other hands did not know what kind of a caboose it was. It was dark when the order was given to watch the track, when plaintiff attempted to get on the step to locate the whereabouts of the train. While the defect in the steps is open to inspection of any one, obvious, at that time, the danger was not apparent. Railway Co. v. Lempe, 59 Texas, 23; Patterson v. Railway Co., 76 Pa. St., 389; Shortel v. City, 24 Am. St. Rep., 322; Luebke v. Railway Co., 48 Am. Rep., 483.

2. Where the servant incurs the risk at the express direction or command of the master or his agent and the danger was not inevitable or the necessary result of the performance of the service, the question is for the jury as to the negligence of the servant. Railway Co. v. Duffield, 47 Am. Rep., 322; Wood, Master & Servant, par. 378; 2 Thomp. on Neg., 1010; Railway Co. v. Bowler, 9 Heisk, 866.

CONNER, Chief Justice.—No objection has been urged to appellant's statement of this case, and it is accordingly adopted as substantially correct.

This is a suit for personal injuries, brought by J. W. Hemphill against the Texas and Pacific Railway Company, in the District Court of Parker County, Texas. For cause of action he alleges that on or about the 28th day of June, 1902, he was in the employ of appellant, working for it in the capacity of a section hand; that some of his duties were to prepare, inspect and keep in good and safe condition appellant's track which runs through Parker and other counties in Texas; that on said day he was directed to go with and ride upon the platform of a caboose car of a freight train for the purpose of examining and inspecting appellant's track from Lambert, a station on appellant's road, to Weatherford, Texas; that in obedience to said order and directions appellee went and stood on the platform of said caboose, which was on the rear end of the caboose car of said train, for the purpose of examining, inspecting said track, and to learn and determine the condition thereof, while the train was going from Lambert to Weatherford; that shortly after the train had left Lambert, and while plaintiff was on said platform attempting to perform his said duties, the train and caboose suddenly stopped, and as it was night and very dark, plaintiff being desirous of knowing where and why the train stopped, and so as to enable him to perform his said duty, made an attempt to step down

on the steps of the caboose for the purpose of seeing and learning what part of the track said train was on, from the light from the engine and the heading of the train, but just as he attempted to step down on said steps, he slipped and fell from said platform or steps to the bottom of a deep gully, ravine or creek over which a bridge was erected, and upon which bridge said caboose car and the platform on which plaintiff was standing, stood, said platform and steps being directly over said bridge and gully, ravine or creek; that he fell a distance of about twenty-five feet and was injured in the manner as alleged; that the proximate cause of his falling, hurts and injuries was on account of and because of the kind of steps which were on said caboose; that said steps were dangerous, unsafe, and were not properly constructed, in that they were too narrow, round and too close to the platform, and were not such steps as were commonly and ordinarily used by railroad companies on their caboose cars, all of which was unknown to plaintiff; that at the time he attempted to step down on said steps it was dark, and he was unable to see the steps and observe their unsafe condition; that he for said reason was unable to see that the caboose car, steps and platform were directly over said bridge and deep gully, ravine or creek; that appellant, its agents and servants in charge of the train were guilty of negligence in having and using said dangerous, unsafe and defective steps, without informing plaintiff of their kind and condition, and in stopping said car and platform over said bridge, and gully or creek or ravine, without notifying appellee that they had done so or were going to do so; and that such negligence was the proximate cause of his hurts and injuries. Appellant answered by general and special exception; a general denial and special plea of contributory negligence, assumed risk, etc. Appellee recovered judgment for $500, and appellant appealed.

The assignments raise the question of the sufficiency of the evidence to support the judgment.

The witness J. B. Herndon testified: "I live in Marshall; I have charge of the freight car department, that is, building and repairing freight cars, and also the building and repairing of cabooses. I have been engaged in this business since 1897. The chief difference in the dinkey and the old caboose is that the dinkey is a lighter and shorter caboose than the old style; the step is very much the same except the old caboose steps are built something like the steps to a house, on the box style, the same as our house steps, and the dinkey steps are built on an iron frame and the frame is built to the side of the car; the top step is an iron rod about one and one-eighth inches in diameter and sits out from the side of the car about two and one-half inches. The step of the dinkey caboose is a reasonably safe step. In my judgment and opinion the step on the dinkey caboose is as safe as the steps on the other caboose." On cross examination the witness testified: "The company put it that way on purpose so that a man stepping down or standing to look down the side of the train could lean out without falling; that step is built perpendicularly and the old style step is slanting like a house step; the first is built like the steps of a ladder and the other like a stairway, that is the chief distinction; the old style step sets in the platform and the dinkey steps are built separate from the

platform and on the outside of the car, that is the difference in the locality. The locality of the steps in the old caboose is similar to the steps on a passenger coach. . . . In the construction of these steps I consider one step just as safe as the other; a man does not walk out of a caboose as he walks out of a house, and the iron rod would be something of a foothold to keep him from slipping off; a man can hold to the grab iron as he steps down. If neither of the cars had grab irons I think it would be as safe to step down from one as it would from the other. Certainly the iron step stuck out about two and a half inches from the side of the car is as safe as the flat step."

Conductor Oscar Bowles testified: "The dinkey caboose has a substantial step. The dinkey step is a more substantial step; in my judgment the dinkey caboose platform is the safest platform to get off of, but the old style caboose is a little better to get on, but you can get off of the dinkey the safest. It is safest the way the platforms are constructed; if the old style caboose has a platform constructed like the dinkey it would be just as safe to have an iron step as a flat one. On a caboose it is just as safe to step on an iron rod as a flat step; I consider the dinkey steps the safest of the two."

Conductor W. S. Carnrike testified: "I consider the dinkey steps just as safe as the steps on the other caboose. I have never had occasion to see or use any kind except the dinkey and the old caboose. I swear that the dinkey caboose is as safe to get up and down on as the other. . It has been my experience that it was as safe to step down on the iron rod as the plank step. This dinkey step is as safe because it is a solid piece of iron about two inches from the platform. They made the step round instead of flat because it would not take up so much room; it extends two or three inches. In my opinion it is a reasonably safe step; a man would have no show to slip off; his heel catches on the rod as he steps down and keeps him from falling. A man can not slip off of the dinkey step; it is out from the platform just far enough to catch your heel in and a man can not possibly slip off."

Road Master J. Y. Burke testified: "I think the dinkey step is a reasonably safe step. The caboose is a car that is made to get on standing still or moving, and a man has to get on them moving as well as standing still, and in winter or sleeting weather I believe the dinkey step would be the safer; when you go to get off the dinkey caboose you put your foot on the iron step and you can not slip for you have a hold for your shoe, after you stepped to the top step it would not be so hard to get down to the other step, and when you got to the lower step, if you should fall, you would be so near the ground that it would not be so dangerous as it would be if you were to fall from the other step."

Brakeman Tighe testified: "I think the dinkey step is as safe as the other step. It is just as safe as the step on the old caboose in my opinion."

The witness I. J. Hicks testified: "I would call the steps on a dinkey caboose a reasonable step."

Appellee thus testified: "I am thirty-five years old; I have worked for the Texas & Pacific Railway Company. I went to work for that company in 1886, and worked for them until 1895 or 1896, and then

quit working for them and went to work for the Fort Worth & Denver. I worked for the Fort Worth & Denver four years and seven months, then worked for the Katy four months, and came back to the T. & P. and worked for that company until I got hurt. . . . When we left Thurber Junction I rode on the top of a box car for twenty or twenty-five miles and when the train stopped at the Santo water tank, I got down off the car and went to the rear end of the caboose. The train was standing still when I got down and came to the caboose; I just put my foot on the bottom step and swung myself up; I didn't notice that it was a dinkey caboose; it was dark and I could not see the caboose, only the bulk of it; I did not strike the top step as I was getting in the caboose; it is easy enough for a man to get on the platform of a caboose without touching either of the steps, if he is a trainman; I think that it is twenty-eight inches from the bottom step to the platform. It is straight up. I will swear that I got up on the platform without touching the top step. I stepped up from the bottom step to the platform; it is two and one-half feet, without touching the iron rod; the dinkey caboose is eighteen or twenty feet long. The old caboose is thirty-two or thirty-three feet long. If any one noticed the inside of a caboose when they went in they could tell the difference in the length. I did not stay on the inside of the caboose at all that night; I went in several times for a drink of water; I do not recollect that I sat down at all; I may have leaned on the side of the car or sat against the railing, but with the exception of that, I am positive I did not sit down that evening. . . . I think the platform of the dinkey caboose from step to step is seven feet. On the old caboose it is hardly so wide, but there is very little difference. Mr. Burke might have been out on the platform before he gave me those directions, but if he was I did not notice him; I did not see him to speak to him until we were about three-quarters of a mile from Lambert. I had gone in the caboose twice before this for water. I did not notice when I went in there that it was a dinkey caboose; there is enough difference to tell that it is a dinkey when you go in if you pay any attention to it, but I do not think unless a man noticed, if he just went in and turned around and came right out, he would likely notice it unless there was a bright light. . . . The main difference in the caboose is that the dinkey is not near so long as the old style caboose. I found out after I fell that I had been riding on a dinkey caboose; I could see that it was a short caboose, while I was lying on the ground under the bridge where I fell. That was the first time that I knew that I was riding on a dinkey caboose. If I had known it was one of the dinkey steps, I would not have stepped down as I did. . . . I got on the caboose at the Santo water tank. It was a dark night. It was dark when we got to Santo. I did not notice what kind of a caboose it was when we were at Strawn. . . . I do not know how often I got off of the dinkey caboose while the train was running. I have gotten off them often when the train was running along slowly."

The witness D. H. Stewart testified: "I rode about twelve or fifteen miles in the box car and got off and went to the back of the caboose. I remember seeing Mr. Hemphill after I got on; I got off at Lambert

station.   Mr. Hemphill must have been riding on the back of the caboose something like an hour before I got off."

The witness Oscar Bowles testified: "A portion of the time during the year 1902 I was running a work train.   I had on a dinkey caboose. I have record showing the number of times I hauled Mr. Hemphill when I had on a dinkey caboose.   I have a memorandum taken from the records; I made the record from my books so that I could be sure of the times.   I think that I would be safe in saying that Mr. Hemphill rode at least twenty times on that caboose.  .  .  .    There is a difference in the appearance of the dinkey caboose and the old style caboose; anyone would recognize the dinkey by the difference in the length of the car; it is much shorter than the old style caboose.   There is a little difference in the step; the dinkey steps are built straight, one over the other, and set out from the side of the car, while the other steps are built more like steps on a passenger coach, and set a little in;  .  .  . the platform is on a level with the bottom of the door, and the rain board is about eight inches wide and three inches thick, sloping down one and one-half inches.   On the old caboose the steps are of plank and about eight inches wide and the bottom step is about sixteen inches from the top one; the platform is about eight inches from the level of the floor. . . .   The dinkey caboose steps extend out about ten inches from the side of the car.   When you go in an old style caboose you just keep going, and the dinkey is only a few steps long, and the cupola stands near the center on the caboose almost directly in the walk as you go through, while the cupola in the old caboose stands nearer one end. .  .  .    A man can not go around the car or go in the cars without noticing the difference in the cupolas of the different cabooses."

It is neither alleged nor shown that the steps in controversy were out of repair and there is no other evidence in the record materially different from that quoted.   True, we have before us two photographs, one of which gives a view of the old style caboose and the steps thereon, and the other a view of the new or dinkey caboose with its steps.   These views, however, but illustrate the testimony of the witnesses, and after a consideration of the whole we fail to find any evidence of negligence on the part of appellant in the matter of the construction of the steps on the dinkey caboose.   The duty resting upon the master is to exercise ordinary care to furnish his servant with a reasonably safe place to work, and with reasonably safe appliances with which to perform that work, and when such care has been exercised and such duty discharged there can be no liability.   See Railway Co. v. Bell, 75 Texas, 50; Behring Mfg. Co. v. Peterson, 28 Texas Civ. App., 194, 67 S. W. Rep., 133; Railway Co. v. McLean, 80 Texas, 87.   All of the witnesses who testified on the subject testified to the effect that the step on the dinkey caboose is at least a reasonably safe one, and we fail to find any substantial basis in the evidence for the contention that appellant was guilty of negligence in providing the dinkey caboose with steps other and different from those with which the old style cabooses are equipped.   Besides, the evidence as a whole leads to the conclusion that the accident in question was either the result of appellee's own negligence, or a result within the risks assumed by him in his employment.   The evidence shows without contradiction that appellee was a railroad employe of many

years' standing; that in the discharge of his duties he had many times got on and off of the dinkey caboose which had been in use on the line of appellant railroad for several years. It is not contended that had appellee known it was a dinkey caboose appellant would be liable. The mere fact, however, that the night was dark and that appellee at the time was in ignorance of the fact will not relieve him. The evidence fails to show the precise number of each character of cabooses used by appellant, but, as stated, appellee was entirely familiar with both kinds of the differing kinds of steps thereon, and of the fact that a dinkey caboose was in a greater or less proportion in constant use, and if he was without knowledge of the character of caboose upon which he was traveling it would seem that in the exercise of ordinary care for his own safety he should have ascertained the character of step before walking from the platform. See International & G. N. Ry. Co. v. Story, 26 Texas Civ. App., 23, 62 S. W. Rep., 132; Rogers v. Railway Co., 76 Texas, 502; Fort Worth Stock Yards Co. v. Whittenburg, 78 S. W. Rep., 363; Horton v. Ft. Worth Packing & Provision Co., 76 S. W. Rep., 211.

The foregoing conclusions render the consideration of other assignments unnecessary, and we conclude that upon the undisputed testimony in this case, the judgment should be reversed and here rendered for appellant.

*Reversed and rendered.*