## VAUGHN v. CENTRAL STATE BANK.
### No. 10599.

Court of Civil Appeals of Texas. Dallas.
April 26, 1930.

Claude C. Westerfeld, of Dallas, for appellant.

Julius H. Runge and D. A. Eldridge, both of Dallas, for appellee.

LOONEY, J.

A. M. Vaughn sued the Central State Bank of Dallas to recover the value of a note deposited with it as collateral security, alleged to have been converted by defendant.

The material facts of the case are undisputed. Plaintiff owed the bank $1,000; evidenced by a promissory note, due October 14, 1921, to secure the payment of which he deposited with defendant a note for $2,500, against Dan Harston. Plaintiff defaulted in the payment of his note, and after considerable effort on the part of the bank to collect from Vaughn and Harston, Mr. Harston, on December 16, 1921, made payment to the bank of $1,013.55, being the exact amount of the principal and interest due on the Vaughn note. Thereupon the bank indorsed the note, without recourse, and surrendered it, as well as the collateral note, to Harston. Plaintiff alleged these facts and prayed for the recovery of damages, interest, etc. Defendant answered by a general denial. At the conclusion of the evidence plaintiff requested a peremptory instruction in his favor; this was refused, and, instead, the case was submitted to a jury on the following special issue: "Do you find and believe from a preponderance of the evidence that the bank was guilty of negligence, as that term has been herein defined to you, in the manner in which it disposed of the notes in question?" which was answered by the jury in the negative. Plaintiff then moved for judgment non obstante veredicto on the idea that the finding of the jury was upon an immaterial issue, and that the undisputed facts otherwise showed that a verdict should have been instructed in his favor. This motion was also denied and the court rendered judgment for defendant, that plaintiff take nothing, etc. Plaintiff moved for a new trial, based on the grounds that the undisputed facts entitled him to an instructed verdict, but, as this was denied, he was nevertheless entitled to judgment non obstante veredicto. The court denied plaintiff a new trial, from which he appealed, and by proper assignments and propositions presents for review these rulings of the court.

The negotiations and transactions resulting in the payment made by Mr. Harston, and the surrender by the bank to him of the notes hereinbefore mentioned, are best told in the language of Mr. Harston and of Mr. W. G. Kelly, vice president of the bank. The Vaughn note was past due and Kelly was endeavoring to make collection; among other things, he said: "I don't remember when the matter was taken up with Mr. Harston in relation to the time the note was due (Vaughn note); it was sometime after maturity. After Vaughn failed to pay the note we took the matter up with Mr. Harston. After we got in touch with Mr. Harston he came up to the bank, and we told him that we had been unable to collect the note from Vaughn and as we had his note up there as collateral, we would expect him to take care of it. * * * On December 16, 1921 the note that Mr. Vaughn had given the bank was sold without recourse to Mr. Harston. * * * I delivered the note that Vaughn signed, and the collateral to Mr. Harston. He paid whatever amount was due on the Vaughn note, with accrued interest, something over one thousand dollars. I sold Mr. Vaughn's note, with the collateral and whatever rights we may have had under it, to Mr. Harston. * * * Harston did not come up and offer to buy the note.

We called his attention to the fact that we had his note up there as collateral on the Vaughn note, and that we had been unable to get Mr. Vaughn to pay it. Mr. Harston came up there and paid us the amount due on Vaughn's note, with accrued interest, and we turned over to him whatever papers we had; we sold him the note, and transferred them to him by our endorsement without recourse. My recollection is that the first time we took the matter up with Mr. Harston he claimed that there had been a failure of consideration for the note, and he did not want to pay it, but we told him that we were looking to him for the money, and he told us that he would try to get Vaughn to pay it, and if he couldn't he would pay it. Mr. Vaughn didn't pay the note and Mr. Harston finally paid the amount due on Vaughn's note, with the accrued interest, and we transferred him the note and collateral, whatever that might have been. I don't remember that I ever told Vaughn that I was figuring on making this deal with Harston. * * * I did not attempt to sell the note to anyone except Mr. Harston. We have the right under our agreement to dispose of the collateral, and we exercised that right, and made the best deal we could. * * * The face of Mr. Harston's note was $2500.00. We delivered the Vaughn note and his own note of $2500.00 to him for $1013.55. I did not notify Mr. Vaughn previous to the transfer that I was going to do what I did do. The money we received from Harston was applied to what Mr. Vaughn owed us at the bank."

Mr. Kelly also testified by deposition; he said: "I believe I had a conversation with Mr. Vaughn about attempting to collect the Dan Harston note; I believe I told him I had communicated with Mr. Harston, and told him that we had his note, and Mr. Harston was surprised, and recited or claimed that the note was settled some way or manner, and he did not know it was hypothecated with the bank. His name was on it and naturally he would protect his name, and I told him we had exhausted every means of collecting the note, but it had not been given attention, and I would eventually expect him to protect his signature on the collateral note, and he finally came to the bank after the third or fourth notice and we sold him our original note, Mr. Vaughn's note, which of course carried the collateral with it. * * * In selling this note to Mr. Harston, as (to) whether we exercised the power of sale provided in this agreement, consideration was taken of those rights. We exercised those rights, in a way, by selling—simply selling the original note, as the most logical way of disposing of the collateral agreement and collecting our note under the collateral agreement, as it provided. Mr. Harston paid the present worth of the Vaughn note, at the time the transfer took place, which was the principal sum of the note, One Thousand Dollars, and accrued interest."

Mr. Harston testified by deposition as follows: "As to what the bank did with that note (his note to Vaughn), Vaughn put it up with them as collateral with the bank and the bank couldn't get any money out of Vaughn and they called on me to pay it. They said they knew I wanted to protect my signature, and I went up and talked to Mr. Kelly and told him the consideration that note was given for, and he said 'we have got your note with your signature on it here, and we are looking to you to protect it; looking to you for the money, Vaughn won't pay it,' and I called up Vaughn about it. I told Kelly if Vaughn didn't take care of it, I would, and I talked to Vaughn about it, and finally I went up and gave them a check for something over One Thousand Dollars and he turned over to me the note and a little instrument Vaughn had executed, the collateral agreement."

He also testified in person, in part, as follows: "As to how I came into possession of those notes, Mr. Kelly at the Central State Bank notified me that Mr. Vaughn's note was past due and that they expected me to take it up, as they had my note up as collateral on his note. It has been too long ago for me to remember the details of that transaction. I know I went up there and paid then the amount due on Mr. Vaughn's note, with the accrued interest, whatever that was, and they delivered me his note and my note that had been put up as collateral; handed me the Vaughn note, with my note attached." The testimony further showed that Mr. Harston was perfectly solvent.

The essential facts deducible from this testimony are few and simple. Mr. Kelly prodded both Vaughn and Harston in his effort to collect the Vaughn note, Vaughn failing to pay, Harston responding to his liability on the collateral note, paid the amount of the Vaughn note, and thereupon the bank surrendered to him both notes, and in doing so placed it beyond its power to discharge its legal obligation to Vaughn, that is, to return his note satisfied, also the collateral note credited with the amount paid thereon by Harston.

The doctrine applicable to these facts is stated in 21 R. C. L. 675, § 37, as follows: "The primary duty of the pledgee is to return the article pledged to the pledgor, immediately upon the performance of the obligation for which the security was given, or on tender of such performance, and his refusal so to do amounts to a wrongful conversion. And, since the pledgee impliedly agrees faithfully to hold the pledge until the conditions have been performed upon the faith of which the choses in action, goods, or personal chattels have been delivered to him the rule is general, if not

universal, that the wrongful or unauthorized disposition of pledged property by the pledgee or his agent so as to put it out of his power to redeliver it on payment of the debt which it secures is a conversion for which an action will lie."

The payment made by Mr. Harston on the collateral note fully satisfied Vaughn's note to the bank, hence the collateral was discharged from the incumbrance and Vaughn was entitled to its return. In 21 C. J. 680, § 41, this doctrine is asserted: " * * * When however the principal debt has been paid or proper tender made, the property (the pledge) is discharged of the incumbrance, and the pledgor or his assignee is entitled to the return of the property pledged, or to retain the same if already in his possession." Also see Matheney v. El Dorado, 82 Kan. 720, 109 P. 166, 28 L. R. A. (N. S.) 980 and note; Stevens v. Wiley, 165 Mass. 402, 43 N. E. 177; De Clark v. Waters, 10 Wyo. 31, 65 P. 855, 856; Brown v. First Nat. Bank (C. C. A.) 132 F. 450; Hart v. Tyrrell, 36 Tex. Civ. App. 626, 82 S. W. 1074, 86 S. W. 350; 31 Cyc. 836, 838, 855; Bowers on Conversions, § 44.

Notwithstanding Vaughn's default in failing to pay his note, it was the duty of the bank to exercise ordinary care to collect the collateral note, or a sufficient amount at least to satisfy the principal note. Mr. Harston was perfectly solvent, hence the bank was not authorized to compromise with or surrender to him the collateral note at less than its full face, with accrued interest.

Mr. Kelly speaks of a sale of the Vaughn note to Harston, but his statements in this regard are but conclusions; the facts do not bear out the idea of a sale, even if one could have been legally consummated under the circumstances. He made no effort to sell the note, did not even discuss a sale with Harston, his purpose being to collect the Vaughn note. Mr. Harston did not pretend that he purchased the Vaughn note; his testimony is to the effect that, after demand was made upon him by the bank, he made the payment because of his liability on the collateral note. Defendant did not attempt in its pleading to excuse its conduct in surrendering these notes to Harston; its only answer to plaintiff's suit was a general denial.

The bank, having collected from Mr. Harston a sufficient sum to satisfy its claim against Vaughn, thereafter held the collateral, credited with the payment, in trust for Vaughn, and, having wrongfully delivered same to the maker, thus rendering itself unable to discharge this legal duty, was guilty of conversion, and plaintiff was privileged to sue, either the bank to recover as damages the balance of the principal and interest due on the collateral note, with 6 per cent. per annum thereon from the date of conversion, or could have sued Harston to recover on the note the residue thereof. Zimpleman v. Veeder, 98 Ill. 613; De Clark v. Waters, 10 Wyo. 31, 65 P. 855, 856; Hart v. Tyrrell, 36 Tex. Civ. App. 626, 82 S. W. 1074, 86 S. W. 350.

The issue of negligence submitted, and the answer of the jury on which the case was made to turn in the court below, were, in our opinion, immaterial. Plaintiff, alleging his case, after setting up the essential facts constituting his cause of action, stated that the bank negligently surrendered the paid-off note and the collateral note to Mr. Harston, and that through said negligent act he was damaged, etc. The characterization of the act of the bank as negligent neither added to nor subtracted from the legal import of the act. The surrender of the collateral to its maker, after being relieved of the incumbrance, without the consent of the owner, and in the absence of any other legal justification, was an illegal act without reference to the care or circumspection exercised by defendant in making the surrender. The finding of the jury will therefore be ignored as immaterial, and as the undisputed facts, aside from this finding, showed that a verdict ought to have been instructed for plaintiff, judgment non obstante veredicto should have been rendered in his favor. Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515, 522; Mixon v. Wallis (Tex. Civ. App.) 161 S. W. 907.

For these reasons we sustain appellant's assignments and propositions, reverse the judgment of the court below, and render judgment in his favor against the bank, for the sum of $2,482.40, with 6 per cent. interest per annum, arrived at in this way: The collateral note, principal, and interest amounted to the sum of $2,666.66 on December 16, 1921, when the payment of $1,013.55 was made by Mr. Harston, leaving a balance of $1,653.10 due on the date of conversion, which has borne 6 per cent. per annum from December 16, 1921, to this date, 8 years, 4 months, and 10 days, amounting to the sum of $829.30, which, added to the value of the note when converted, to wit $1,653.10, aggregates the sum of $2,482.40, which will bear interest at the rate of 6 per cent. per annum from this date.

Reversed and rendered for the appellant.