GULF, C. & S. F. RY. CO. v. DRENNAN.
(No. 8873.)

(Court of Civil Appeals of Texas. Ft. Worth.
May 25, 1918. Rehearing Denied
June 29, 1918.)

1. MASTER AND SERVANT ⬪⟜111(1)—INJURY TO
EMPLOYÉ—SAFE PLACE TO WORK.

The rule requiring master to furnish servant safe place in which to work does not apply to work in a box car unloading lumber therefrom, it being unreasonable to expect master to inspect every car of lumber before the unloading thereof.

2. MASTER AND SERVANT ⬪⟜129(6) — INJURY
TO EMPLOYÉ — RAILROADS — PROXIMATE
CAUSE.

Where, in process of switching, string of cars is bumped against lumber box car changing position of lumber, injury to employé falling into open space formed by the lumber sliding is not proximately caused by the negligent bumping.

3. COMMERCE ⬪⟜27(5) — "INTERSTATE COM-
MERCE"—RAILROAD EMPLOYÉ.

Where lumber is loaded in a box car in one state and is shipped to another state to be used in the manufacture of doors for grain cars designed for the handling of interstate shipments of grain, an employé who unloaded the lumber

in the latter state is engaged in "interstate commerce."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

4. MASTER AND SERVANT ⬪⟜228(1)—INJURY
TO SERVANT — INTERSTATE COMMERCE — AS-
SUMED RISK.

In action governed by federal Employers' Liability Act for injury to railroad employé engaged in interstate commerce, railroad can invoke defense of assumed risk.

5. MASTER AND SERVANT ⬪⟜217(20)—INJURY
TO SERVANT—ASSUMED RISK.

Where railroad employé, after seeing a box car containing lumber jammed and jarred by other cars, proceeds to unload lumber and is injured by falling into open space over which lumber had slid because of impact, he cannot recover for injury, having assumed risk of working in the car after the jarring of the lumber.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by Geo. W. Drennan against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Lee, Lomax & Smith, of Ft. Worth, and Brown & Lockett, of Cleburne, for appellant. Walker & Baker, of Cleburne, for appellee.

DUNKLIN, J. G. W. Drennan was engaged by the Gulf, Colorado & Santa Fé Railway Company as a workman in its shops in the town of Cleburne. The department of the shops in which Drennan was engaged was known as the "grain door department," in which doors were manufactured for cars in which grain was shipped; the doors being designed for the purpose of preventing the leakage of grain from the cars. Lumber used in manufacturing such doors was shipped in on the defendant's cars to a point near the shops, and one of Drennan's duties was to assist in unloading the lumber therefrom and carrying it to the shops. While so employed, a car of lumber was switched onto the side track. The car was a box car, and all the lumber in it was piled lengthwise except one tier opposite the doorway at the side of the car was piled crosswise the car. On the morning of the date of the accident hereinafter mentioned, Drennan and his fellow workmen unloaded a pile of 22-inch pieces from the north end of the car leaving the crosswise tier and the remainder of the lumber in the north end of the car about waist high. When work was resumed in the afternoon, Drennan got on top of the tier at the door and walked towards the north end of the car, and, after taking up an armful of short pieces, he started to return to the door by walking on top of the lumber. Before reaching the door, a piece of lumber upon which he stepped gave way and caused him to fall into a hole or space between the tier of lumber lying crosswise at the door and the ends of the lumber next thereto loaded

lengthwise the car and over which Drennan had walked. As a result of that fall, Drennan sustained an injury, and he instituted this suit against the railway company to recover damages therefor. A trial before a jury resulted in a verdict and judgment in plaintiff's favor for the sum of $1,700, from which the railway company has prosecuted this appeal.

Immediately preceding Drennan's entry into the car when he resumed work in the afternoon, a string of other cars, while being switched, were jammed against the car of lumber in such a manner as to cause the top-most pieces of lumber piled lengthwise the car, and upon which plaintiff had walked prior to the noon hour, to skid or slide in such manner that, while one end thereof rested upon that pile of lumber, the other rested upon the tier running crosswise the car opposite the door; and this is the lumber which spanned the space or hole into which plaintiff fell and which gave way with him when he stepped upon it.

In plaintiff's petition it was alleged that the operatives of the locomotive handling the other cars on the occasion in controversy were guilty of negligence in bumping them against the car of lumber in such a violent manner as to cause the disarrangement and change of positions of the lumber in the car in the manner above mentioned, and thereby to conceal from plaintiff's view the open space between the piles of lumber. That issue of negligence was the only issue of negligence submitted to the jury as a basis for the verdict in plaintiff's favor.

The defendant requested the court to instruct a verdict in its favor and reserved a bill of exception to the refusal of the court so to do, and also reserved an exception to the charge given by the court; and those exceptions to such rulings of the court are presented in different assignments of error. By those assignments and propositions thereunder appellant insists that the evidence introduced to establish negligence on the part of the defendant was insufficient to support a recovery.

The principal theory upon which plaintiff sought a recovery was that the defendant had failed in its legal duty to exercise ordinary care to furnish him a reasonably safe place to work; although in his pleadings he did not limit his right to recover to that particular theory, but claimed liability of the defendant at all events by reason of the negligence alleged.

The proof shows that, immediately after beginning work in the afternoon on the date of the accident, plaintiff resumed the work of unloading the car in obedience to instructions from his foreman; but the foreman was not present at the time, and there was no proof that he knew of the bumping of the car on that particular occasion. The proof shows further that, at the time the car of lumber was bumped into by the other cars, plaintiff was standing by the track and saw it, and according to his own testimony he appreciated the force of the impact, and immediately thereafter entered the car voluntarily and without any further instructions from any one so to do. Plaintiff further testified as follows:

"I saw the engine when it coupled onto this string of cars. I was near the north end of the switch track right close to the car, just far enough to be out of danger. I was waiting for it to switch back in so we could unload the car. The engine backed in there and coupled onto the cars, and shook them up a right smart. Some lumber was piled up against the car on the north end. When it bumped into that car, it knocked it all down.

"I had been unloading lumber in the grain door department about three months at the time of this accident. It was customary for them to switch cars there; they did it every day, nearly every day. I had seen them going in and out before. They handled these cars rough with the engine. I don't know that they did that all the time, but they did some of the time. I mean by that, that they bumped into them hard when they would go to couple on. That day they coupled onto them and hit them hard, and at other times they would hit them easy and not very hard, and when they hit them easy it did not have any effect on the cars at all and would not knock them back as on this day. * * * Up here at the shops we would ordinarily unload about two cars a day. There was supposed to be eight men, four on each car. Sometimes we would unload more cars than that, and sometimes not so many. When a car would come in there to be unloaded, the foreman would direct us to unload it. He would tell us to unload it. That is all the instructions we needed. Yes, sometimes the foreman would get up in the car and look around before we unloaded it, but we did not expect him to do that. All that was required of me was to unload the car.

"The place where I fell was located right north of the door on the west side of the car. When I went into the car and went towards the north end, I do not know over which part of the car I walked. As I went to get this load of lumber, there was nothing in the car or about the car where I was walking on the west side to attract my attention as being unusual. As I came back across with this load of lumber, the lumber upon which I was walking gave way. There was a hole or vacant place that was covered up, and when I stepped on this lumber it slipped into the hole or vacant place and the lumber kicked up behind me and I fell. * * * Q. When you first got in this car, Mr. Drennan, on the west side, and started up here where you got this lumber, did you look to see where you stepped as you stepped? A. Well, I looked between them. I looked down as I always do. * * * I was watching just where I was going. I have seen lumber shifted in the cars several times. I have seen holes or vacant places in the car. I have seen it where the car of lumber had shifted some. I have seen the switching of lumber make vacant places in it. I have seen it make vacant places. If the lumber was put in the car and tied all the way, it would not shift as this lumber did; but, when you take out some and they hit it hard enough, it will shift it. They hit it hard enough this time. I have seen cars of lumber with holes in them before. I have seen vacant places in cars of lumber. I never made any complaint about bumping the cars and making holes in the lumber; that was not my business, not my duty."

The evidence shows further that in the switching and coupling of cars it is practically impossible to avoid striking them with

more force than necessary in some instances. In order to conclude that the act of bumping the car in question in the manner in which it was struck by the other cars was negligence warranting a recovery by plaintiff for the injuries he sustained, then it must be said that a person of ordinary prudence situated as were the operatives of the locomotive, and with knowledge that the car of lumber was about to be unloaded in the manner it was unloaded, would reasonably have anticipated some like injury as a result of such jolting of the car, and would have avoided so striking the car for that reason.

[1] According to plaintiff's testimony, if the hole or space had not been covered by the sliding top pieces of lumber, he would not have fallen therein. There is no proof that, as a result of switching, the lumber in such cars had previously so slidden as to cover the spaces between the tiers in such a manner that they could not be seen by persons unloading lumber while exercising ordinary care for their safety. The injury was due to one of the transitory changes in the handling of the lumber, and the general rule requiring the master to furnish the servant a safe place to work was not applicable, since it would be entirely unreasonable to say that the master owed plaintiff the duty to inspect each car of lumber before he undertook to unload it in order to avoid injury to him from such causes as those. Armour v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710, and authorities cited.

[2] In view of all the facts and circumstances in evidence, we are of the opinion that plaintiff's injury, or an injury of like kind under like circumstances, could not reasonably have been foreseen as a probable consequence of the act of the operatives of the locomotive in striking the car of lumber with other cars in the manner in which it was struck; and that their act in so doing cannot, as a matter of law, be considered such a failure on the part of the defendant to exercise ordinary care for plaintiff's safety as to warrant a recovery in his favor. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602.

[3, 4] Furthermore, the proof shows without controversy that in unloading the lumber plaintiff was engaged in a duty pertaining to interstate commerce, since the car had been loaded in another state and the lumber shipped from that state to Cleburne for the defendant's use in manufacturing doors for grain cars which were designed for use in handling both interstate and intrastate shipments of grain. Under such circumstances, the law of assumed risks invoked by defendant is applicable. Illinois Central Ry. Co. v. Porter, 207 Fed. 311, 125 C. C. A. 55; Grow v. O. S. L. R. Co., 44 Utah, 160, 138 Pac. 398, Ann. Cas. 1915b, 481; Pedersen v. Delaware, Lackawanna & Western Ry. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; St. Louis S. W. Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156; Freeman v. Powell, 144 S. W. 1033.

[5] According to plaintiff's own testimony copied above, he by actual experience knew the effect upon a car of lumber which might reasonably be expected as a result of the car being struck by another car. He knew this as well as any other employé of the defendant. If the defendant should have foreseen that the top pieces of lumber would so skid as to cover up some of the spaces between the piles of lumber, then he should have foreseen the same results, since he stood by and saw the car when it was struck and realized that it was struck with considerable force. According to his own testimony, the foreman was not expected to inspect the lumber to see whether or not it could be unloaded with safety to the persons engaged in that work. After seeing the car struck and realizing the force of the impact, he began to unload the lumber, and in so doing he assumed the risk of the particular danger that he encountered. Ft. Worth Stockyards Co. v. Whittenburg, 34 Tex. Civ. App. 163, 78 S. W. 363; Dallas Gas Co. v. Patton, 147 S. W. 313; Tex. & Pac. R. Co. v. Lewis, 133 S. W. 1086; T. & P. Ry. Co. v. Hemphill, 38 Tex. Civ. App. 435, 86 S. W. 350.

For the reasons indicated, the judgment is reversed, and judgment is here rendered in favor of the appellant.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.