## MONTGOMERY v. HOUSTON TEXTILE MILLS.

### No. 9395.

Court of Civil Appeals of Texas. Galveston. Jan. 31, 1930.

Rehearing Denied Feb. 20, 1930.

John Snell and Vinson, Elkins, Sweeton & Weems, all of Houston, for appellant.

Fulbright, Crooker & Freeman, W. B. Bates, and T. H. Cody, all of Houston, for appellee.

PLEASANTS, C. J. This is a suit by appellant to recover damages for personal injuries alleged to have been caused by the negligence of appellee.

For cause of action plaintiff's petition alleges, in substance, that while working as an employee of A. T. Vick Company, the contractor for placing electrical wiring for appellee in a building of appellee's in course of construction by G. C. Street Construction Company under a contract with appellee, he stepped upon a nail which was protruding up from a board or strip of lumber which had been negligently dropped and left by a servant or employee of appellee engaged in uncrating machinery for appellee, upon the floor of the building in which appellant was working, and thereby received painful and serious injury to his foot.

The grounds of negligence upon which appellee's liability is predicated are thus stated in the petition:

"That the defendant, its agents, servants and employees were guilty of negligence in the following particulars, to wit:

"(a) The defendant was guilty of negligence in not furnishing the plaintiff with a reasonably safe place in which to work.

"(b) The defendant, its agents, servants and employees were guilty of negligence in not removing the said board or plank with the nails exposed from said premises at the time the said machinery was uncrated.

"(c) The defendant, its agents, servants and employees were guilty of negligence in permitting the said plank or board with the nails in it with the points turned up to remain on its premises where the plaintiff, for its use and benefit, was expressly invited to perform work for the defendant.

"(d) The plaintiff did not know that the defendant, its agents, servants and employees had uncrated machinery on said floor where he was required to work and did not know that a plank or board with nails in it was or would likely be in said building. That the defendant, its agents, servants and employees knew that machinery had been uncrated in said warehouse and on the floor where this plaintiff was required to work, and knew, or in the exercise of ordinary care should have known, that the said board or plank was left on said premises, and, therefore, the defend-

ant, its agents, servants and employees were guilty of negligence in not warning the defendant of the danger to which he was exposed by coming in contact with a board or plank with nails in it.

"(e) The defendant was guilty of negligence in not furnishing the plaintiff with sufficient light to be able to see the floor of said premises and the said plank with nails in it.

"(f) The defendant was guilty of negligence in not so lighting the building in which plaintiff was working at the time in question to enable plaintiff and other employees of A. T. Vick Company to see over the entire room and discover the said plank or board with nails in it.

"(g) The defendant was guilty of negligence in furnishing the plaintiff with a place in which to work that was so dark that the board or plank with nails in it could not be seen and thus became a hidden danger.

"(h) The defendant knew, or in the exercise of ordinary care should have known, that the only light in the said warehouse and on the floor where plaintiff was working was that provided by the small windows near the ceiling and the doors, and the defendant knew, or in the exercise of ordinary care should have known, that the said natural light was insufficient to sufficiently light the said warehouse for the plaintiff to properly and safely perform his services as an electrician, and the defendant was, therefore, guilty of negligence in not placing in said warehouse and on the floor where plaintiff was working artificial light of some kind or character in order for the place to be sufficiently lighted for plaintiff to properly perform his work.

"That each and all of the aforesaid acts of negligence acting separately and concurrently were a direct and proximate cause of plaintiff's injuries and the consequent damage thereto."

In its answer upon which the case was tried, appellee in addition to a general demurrer and general denial specially pleaded:

"For further answer herein, if required to answer further and only in that event, this defendant will admit that it made and entered into a written contract with G. C. Street Construction Company, as independent contractor, to build certain improvements, including a three-story warehouse of re-enforced concrete, and will admit that defendant made a written contract with A. T. Vick Company, as independent contractor, to install in said concrete warehouse certain electrical equipment, not including however elevators.

"This defendant would show that it had stored certain machines in said warehouse with the consent of the contractor G. C. Street Construction Company, and that said machines were in storage in said warehouse on or about October 8, 1926; that at and prior to said time this defendant had no right to possess or control said premises or of said warehouse and did not assert nor assume any possession or control over said warehouse, or any part thereof, and that its storage of said machines in said warehouse was with the consent of the general contractor, G. C. Street Construction Company, and that said premises and improvements were not delivered to this defendant until after the injuries alleged by plaintiff in his petition to have occurred on October 8, 1926, and that this defendant was a mere licensee with reference to the storage of the machinery as aforesaid.

"This defendant would show that the contract it made with A. T. Vick Company was made at a time that it was well known between the said A. T. Vick Company and defendant that defendant was not in possession and control of the premises but that the improvements on said premises were in the process of construction and in the possession of the general contractor for that purpose, and this defendant would show it had never come into possession of said premises save and except as a licensee in the manner aforesaid and that it had never gone into the operation of its business upon the said premises, and that the labor then and there being performed by plaintiff was being performed in anticipation of defendant going into possession of said premises and that it was the duty of the aforesaid general contractor, G. C. Street Construction Company, and A. T. Vick Company, and of other independent contractors engaged in erecting and constructing the improvements on said premises, and of their servants, including plaintiff, to render said premises safe for the occupancy of themselves while thereon and to render same safe for this defendant as and when it went upon said premises and as and when the same was turned over to this defendant as a completed job.

"This defendant would further show that it had no knowledge of any nail being exposed on said premises so that plaintiff could be injured thereby, and that plaintiff's means of knowing of such nail was equal to and superior to that of defendant, and that the presence of such nail was as open to the knowledge and discovery by plaintiff as it was by this defendant, and defendant would show that plaintiff being then and there engaged in the installing of electrical lights and equipment in the building in process of construction, thereby assumed the risk and danger incident to such construction and installation and from boards and planks with protruding nails.

"This defendant would further show that plaintiff was guilty of contributory negligence without which said injury would not have occurred to plaintiff, and that said con-

tributory negligence was the proximate cause of plaintiff's injury—the said contributory negligence consisting of jumping or stepping to a floor without properly looking and taking adequate precaution to determine whether or not it would be safe so to do; especially which contributory negligence was the proximate cause of plaintiff's injury."

At the close of the testimony introduced by appellant, the trial court, on motion of appellee, instructed a verdict in its favor, and upon return of the verdict judgment was rendered accordingly.

There is little, if any, conflict in the testimony, and none upon any material issue of the case. The evidence shows that in March, 1926, the appellee entered into a contract with G. C. Street Construction Company for the construction for appellee of a three-story reenforced concrete warehouse and an adjoining millhouse. The construction of this building was not completed until the middle of November, 1926. This contract did not include the placing of electric wires in the building for light and power purposes, and in August, 1926, appellee made a contract with A. T. Vick Company for wiring the building. Appellee also had a contract with a machinery company to furnish and install the machinery necessary for the operation of the mill. This machinery, which consisted of looms and motors, began to arrive in Houston some time in August, 1926, and appellee obtained permission from the Street Construction Company to store it on the lower floor of the uncompleted warehouse building. The machinery came in from time to time during August and September and was stored by appellee's employees on the lower floor of the building, as it arrived. Some of this machinery was crated when it arrived and was thereafter uncrated by employees of appellee. The warehouse floor upon which it was stored was 60x75 or 100 feet in dimension. The machinery was placed near the middle of the floor and covered with a tarpaulin to protect it from rain, the roof not having then been placed on the building.

Appellant was an employee of the A. T. Vick Company, and while engaged as such employee on October 8, 1926, in placing electric wires on the ceiling of the lower floor of the building, received the injuries of which he complains. In attaching the wires to that portion of the ceiling immediately above the stored machinery, he got up and stood upon the machinery while fastening the wire to the ceiling. The machinery was placed so close together that it was impracticable for appellant to use his stepladder. After fastening the wire he stepped down to the floor between two pieces of the machinery, and a nail protruding up through a strip of lumber stuck into his foot and caused him painful and serious injuries.

The evidence is sufficient to sustain a finding that this board with the protruding nail had been a part of the crating on some of this machinery. There were no lights in the warehouse at the time appellee was injured, and the floor between the pieces of machinery where appellant stepped was so dark as to obscure appellant's vision of the nail in the board.

The evidence further shows that the employees of the machinery company engaged in erecting the machinery, the employees of the Street Construction Company, and other employees of the A. T. Vick Company, were using this warehouse in the course of their employment at all times on the day appellant received his injury.

The manager of appellee, who testified as a witness for appellant, after testifying that the employees of appellee placed the machinery in the warehouse as it arrived and placed the tarpaulin over it, that some of it was crated when it came in and some not crated, "and that that was crated, our employees uncrated it and put the tarpaulin over it," further testified: "The Whiting Machinery Works of Whittinville, Mass., and the Compton & Knowles Loom Works of Worcester were erecting it. We had a contract with a definite price with them to erect this machinery. It was just like we had for the erection of the building, we had to pay the erectors so much per hour, their board and transportation, the contract reads that way. They had supervision of uncrating and the erection of all the machinery, we can't touch the machinery without their supervision. We store the machinery as it came in, our men unloaded it and put it in the warehouse, their men were not there when we moved it in, but they were there when we uncrated it."

It is, we think, clear from this statement of the facts shown by the undisputed evidence that appellee as the owner of the premises was not liable for appellant's injury, unless the injury was caused by an affirmative act of negligence or omission of appellee or its employees engaged in the performance of the duties of their employment not connected with and independent of the work of the complete construction and finishing of the building, and that the evidence fails to raise an issue of such negligence on the part of appellee, or its employees engaged in performing work for appellee.

The cause of action alleged in plaintiff's petition is predicated upon the theory that appellee as owner of the premises was under the duty to plaintiff, who was an invitee upon the premises, to keep the premises reasonably safe for the performance by plaintiff of the duties of his employment under an independent contractor engaged in equipping the uncompleted building for use by appellee.

■ This theory of the case is not sustained by the decisions. The owner of the premises cannot be held liable for an injury caused by the temporary condition of a building then in course of construction and not in his pos-. session or control at the time its dangerous condition was brought about, when such temporary dangerous condition was unknown to the owner of the premises prior to the time the injury was caused thereby.

In the case of Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710, 711, the Court of Civil Appeals, in an opinion approved by our Supreme Court by refusal of a writ of error, announced the rule applicable to the situation shown by the evidence in this case in the following language: "But it is insisted that the duty of exercising care to furnish a reasonably safe place to work, resting upon appellant, was absolute and nonassignable. But to this general rule there is the well-known exception that the master is not liable where the danger to which the employee is exposed is merely a transitory one, due to no fault of plan or construction, but is one where the work is of such a characer that as it progresses the environment of the servant must necessarily undergo frequent changes, and the injury is traceable to one of these transitory changes. This exception finds its illustrations for the most part in cases involving the construction of works," citing authorities.

Other cases in which this rule is announced and followed are Gulf, C. & S. F. Ry. Co. v. Drennan (Tex. Civ. App.) 204 S. W. 691; Decatur v. Tompkins Co., 58 App. D. C. 102, 25 F.(2d) 526, 60 A. L. R. 402.

■■ It is to be observed that the ground upon which these decisions are based is that in the work of construction of a building temporarily dangerous conditions will necessarily arise, and any workman engaged in such construction assumes the risk of such danger, and that it would be unreasonable to hold the owner or the person in possession and control of the building responsible for such condition, of which he had no knowledge. The doctrine of the negligence of a fellow servant is not made the basis nor involved in the rule announced. It is perfectly clear that the A. T. Vick Company is not liable to appellant for the injury caused him, and we cannot see why the owner of the premises, who had no possession or control of the building, the temporary unsafe condition of which brought about the injury, should be held to occupy a different relation to appellant in respect to the duty to furnish him a safe place in which to perform his work. A necessary part of the completion and equipment of the building for the use for which it was designed was the placing of the machinery in the mill building. This work, like that of the general construction of the

building, and its wiring for electric light and power purposes, was being carried on by independent contractors. The machinery for the mill was uncrated and installed by the contractor from whom it was bought, and if employees of appellee assisted in uncrating the machines, they did so under the direction and control of the contractor. The work of all of the independent contractors was being carried on in the building in which appellant received his injury. He knew of this situation and must be held to have assumed the risk of danger necessarily incident to the progress of work of this character.

■ The claim of liability of appellee because of the unlighted condition of the building is wholly untenable. The A. T. Vick Company, for whom appellant was working, was under contract with appellee to do the necessary work of furnishing lights for the building, and appellant at the time of his injury was engaged in this work. It would seem unnecessary to cite authority to sustain the proposition that one employed to place lights in an unlighted building could not hold the owner liable for injury sustained because of the absence of lights in the building. The question has, however, been directly decided. In Allen v. Ry. Co., 14 Tex. Civ. App. 344, 37 S. W. 171, it is said: "Where a servant is employed to put a thing in a safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in a safe condition and good repair for the purpose for such employment."

We agree with the trial court that the evidence in this case fails to raise an issue of the liability of appellee for appellant's injury, and the jury were properly instructed to return a verdict in appellee's favor.

It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.