## HOUSTON TEXTILE MILLS v. MONT-GOMERY et al.

### No. 10099.

Court of Civil Appeals of Texas. Galveston.

April 30, 1935.

Rehearing Denied May 16, 1935.

Fulbright, Crooker & Freeman, of Houston (W. B. Bates and Chas. A. Perlitz, Jr., both of Houston, of counsel), for appellant.

Vinson, Elkins, Sweeton & Weems, John Snell, and Fred L. Perkins, all of Houston (C. M. Hightower and E. E. Townes, Jr., both of Houston, of counsel), for appellees.

PLEASANTS, Chief Justice.

This suit was instituted by appellee E. O. Montgomery for himself and on behalf of the Employers Liability Assurance Corporation, Limited, of London, England, which concern paid him certain compensation on account of the injury sustained by him while working in the course of his employment. His former wife, having been divorced after the injuries were sustained, joined by her present husband, Bailey Jones, intervened as parties plaintiff, setting up a half interest in and to any amount which the plaintiff, E. O. Montgomery, might recover. The suit was to recover certain alleged damages resulting from the plaintiff's sticking a nail in his foot while performing services for the A. T. Vick Electric Company, who were installing electrical equipment in certain buildings being constructed for the defendant.

The trial in the court below resulted in a verdict and judgment in favor of appellee for the sum of $5,000, $394.30 of which amount was awarded the assurance corporation, and of the remainder one-half was adjudged to appellant Montgomery, and one-half to intervener Mrs. Bailey.

This is the second appeal of this case. The opinion of this court on the first appeal, affirming a judgment in favor of the defendant Textile Mills, is reported in 24 S.W.(2d) 783. A writ of error was granted from our judgment of affirmance and the Supreme Court set aside our judgment and reversed and remanded the cause to the trial court for retrial. The opinion of the Commission of Appeals reversing and remanding the case, which was approved by the Supreme Court, is reported in 45 S.W.(2d) 140, 142, 143.

The trial from which this appeal proceeds was upon the same pleadings as the former trial, but the undisputed evidence on the last trial upon the vital issue in the case is wholly different.

All of the evidence shows that the warehouse in which plaintiff, Montgomery, received his injury was in course of construction, and at the time of the accident by which plaintiff was injured was in the possession and control of the contractor, the Street Construction Company. This company also had a contract with defendant for the construction of a mill building located on the same premises as the warehouse, and about 100 yards distant therefrom. Neither of these buildings was finished and both were in the possession and control of the contractor. The de-

fendant also had let contracts for furnishing and equipping the buildings with the necessary appliances and machinery for carrying on a textile manufacturing business. Whiting Machinery Works of Whitingville, Mass., and the Crompton & Knowles Loom Works of Worcester, Mass., had the contract for furnishing and erecting the textile machinery in the factory building. The Park Cramer Company furnished and installed the automatic sprinkler system for the prevention of fire and a humidifying system necessary for the textile mill. A. T. Vick Electric Company (plaintiff's employer) had the contract for doing all the electrical work, including the wiring of the two buildings for lighting purposes and the running of machinery and elevators and installation of the motors which were furnished by General Electric Company.

The general building contractor necessarily began his work first, but as the work progressed the other contractors came in with their respective crews and during a considerable portion of the time while the buildings were being constructed all of the contractors were simultaneously engaged in the performance of their contracts. The general contractor, on account of delay in receiving certain large timbers necessary for the mill building, had to delay the installation of the flooring in such building. As a consequence, the factory building was not ready for the machinery when it arrived. Houston Textile Mills, after securing the permission of the general contractor, stored this machinery in the warehouse until the mill building was ready for its installation. The plaintiff, while installing wiring for the lighting of the warehouse under his employment relation with the A. T. Vick Electric Company, stepped down from one of the looms, which he was using for scaffolding, and stepped upon a nail protruding through a strip of lumber lying on the floor, which caused the injuries of which he complained. His employer carried workmen's compensation to cover such injuries and he had received compensation from the assurance corporation at the rate of $20 per week for the total sum of $349.30. He filed this suit against the Houston Textile Mills for himself and for the benefit of the insurance company, alleging several grounds of negligence which may be summed up as follows:

First, that the Houston Textile Mills, as the owner of the building, was negligent in not furnishing him a safe place to work; second, that the Houston Textile Mills had been negligent in that it had uncrated the machinery and left a piece of the crating material in the warehouse with the upturned nail; third, that the building was dark and he could not see where he was stepping; and, fourth, Houston Textile Mills was liable for failure to have the building sufficiently lighted so that he could see where he was stepping.

The only issue of negligence of the defendant as the cause of plaintiff's injury submitted to the jury is found in the following special issues:

"No. 1: Do you find from a preponderance of the evidence that the defendant, its agents, servants, or employees uncrated any of the machinery belonging to the defendant in the room in which plaintiff was working on or about October 8, 1926?"

"No. 2: Do you find from a preponderance of the evidence that the defendant, its agents, servants, or employees left upon the floor of the room in which plaintiff was working on October 8, 1926, a board or plank with nails in it from such crated machinery and upon which plaintiff was injured?"

The jury answered each of these questions in the affirmative. Upon these findings the jury predicated their further findings of negligence of defendant as the proximate cause of plaintiff's injury.

From this statement of the issues submitted to the jury, plaintiff's right of recovery against defendant depends wholly upon the sufficiency of the evidence to sustain the findings of the jury that defendant's agents, servants, or employees uncrated machinery of defendant in the room in which plaintiff was working on or prior to the day of his injury, October 8, 1926, and left upon the floor of the room a board or plank with nails in it, which they had taken from the crated machinery, and by which plaintiff was injured.

The testimony of each of the three witnesses who handled this machinery when it was placed in the warehouse and when it was taken therefrom and installed in the mill building is that none of it was uncrated by them in the warehouse, and that it remained crated during all the time it

was kept in the warehouse. The contract for the purchase of the machinery required the seller to install it in the mill, and each of these witnesses testified that the agent or employee of the seller in charge of the installation of the machinery called for their assistance in moving the machinery from the warehouse into the mill building and there installing it, and that when they moved the machinery from the warehouse into the mill building none of it had been uncrated and all of its uncrating was done in the mill building. The following quotation from the testimony of witness Greening is fully corroborated by the testimony of all of these witnesses:

"Q. When was the machinery other than the motor, the elevator motor and such equipment stored in the warehouse, when was the machinery moved out of the warehouse and placed in the mill? A. About November the 8th, our records show that the erectors from the machinery company arrived November 8, 1926, and they immediately started moving the machinery in and setting it up.

"Q. Who erected it? A. The machinery was erected by the manufacturer of the machines assisted by some of our employees.

"Q. What do you mean by being assisted by some of your employees? A. Transporting the machine from the warehouse to the buildings would be done by our employees under his supervision.

"Q. What do you mean? A. He would be present at the time.

"Q. Who is he? A. The machinery erector of the company.

"Q. When was this machinery uncrated? A. It was not uncrated until it was moved into the main mill, and it was uncrated in the main mill.

"Q. State whether or not your employees had uncrated any of the machinery before that time? A. I am positive they had not."

This testimony is uncontradicted, unless the fact that the board or plank which contained the nails by which plaintiff was injured was similar in all respects to some of the boards with which the machinery was crated, and the further fact that Mr. Mitchell, the general manager of the defendant, made the following answers to questions propounded to him by plaintiff's attorney:

"Q. Now, as the machinery came in, who placed it in the warehouse? A. Our warehouse men.

"Q. Your employees? A. Yes, sir.

"Q. Who uncrated the machinery and placed the tarpaulin on it? A. Our employees covered it all with tarpaulin so it would not be ruined by the rain that came down, because we had no roof on it.

"Q. The machinery was crated when it came in, was it? A. It was crated and skidded; some of it was not crated.

"Q. But that that was crated, your employees uncrated it and put the tarpaulin on it? A. Yes, sir."

This witness testified by deposition and when his testimony as a whole is considered it is clear that he did not by his affirmative answer to the double question propounded by plaintiff's attorney, that the employees of defendant "uncrated the machinery and put the tarpaulin over it," intend to say that the machinery was uncrated when it was placed in the warehouse. On the contrary, his positive, unequivocal statement in other portions of his deposition is that none of the machinery was uncrated until the erector, the employee of the seller, arrived to begin installing it in the mill building. The undisputed evidence shows that the erector did not arrive to begin the installation of the machinery until November 8, 1926, a month after the date plaintiff was injured and several months after the machinery was placed in the warehouse. If this evidence could be held sufficient to raise an issue as to whether the employees of the defendant uncrated the machinery when they placed it in the warehouse and left on the floor of the warehouse the board which was from the crating, with the nails in it, upon which plaintiff stepped and was injured as alleged, the finding of the jury in plaintiff's favor is so against the great weight and preponderance of the evidence as to forbid its affirmance by this court.

■ The majority of this court are further of opinion that the evidence is not sufficient to raise an issue of defendant's liability for plaintiff's injuries, and that the trial court erred in not instructing a verdict in favor of defendant.

As pointed out in the opinion of the Commission of Appeals before cited, we erred in our former opinion affirming the judgment in favor of defendant on the

first trial of this case, in failing to give any consideration to the fact, which we found from the evidence on that trial, that employees of the defendant in compliance with the duties of their employment uncrated the machinery when they placed it in the warehouse. Having found this fact, and there being no evidence to show that the board with the nails could have gotten on the floor otherwise, the jury might have reasonably inferred that it was negligently left there by defendant's employees when they uncrated the machinery. As we have before indicated, we think the evidence on the second trial, from which this appeal is taken, conclusively shows that the employees of defendant did not uncrate the machinery when it was placed in the warehouse, and not until it was moved to the mill building, a month after plaintiff stepped on the board with the nails, which caused his injury.

█ The evidence upon the trial from which this appeal is taken can hardly be said to raise even a surmise or suspicion that the board with the nails protruding therefrom was dropped and left upon the floor of the warehouse by any employee of the appellant in the performance of the duties of his employment. Clearly nothing more than a surmise or suspicion of such fact can arise on this evidence. It is the settled rule of decision in this state that it requires evidence of higher probative force than this to raise an issue of fact for the determination of a jury.

█ ,The cases of Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710, Gulf, C. & S. F. Ry. Co. v. Drennan (Tex. Civ. App.) 204 S. W. 691, and Decatur v. Chas. H. Tompkins Co., 58 App. D. C. 102, 25 F.(2d) 526, 60 A. L. R. 402, cited in our former opinion, sustain the legal proposition that the owner of premises is not liable for injury caused by the temporary condition of a building in course of construction and not in his possession or control when such temporary dangerous condition was unknown to the owner and not brought about by a servant or employee of his in the performance of the duties of his employment.

These conclusions require that the judgment be reversed and judgment here rendered for appellant, and it has been so ordered.

Reversed and rendered.

GRAVES, Justice (dissenting).

These considerations prompt the dissent:

(1) This was a jury trial, and all the same evidence upon which the Supreme Court before reversed this court—acting then as in the present appeal through its Chief Justice—in holding that an issue of fact was thereby raised for the jury, was to the same extent and with like effect received upon this trial, with the testimony of appellant's witnesses, Greening and Mitchell, added, whereby they undertook to adduce an alibi for it in testifying that the machinery was not uncrated until after the appellee's injury; but how this belated addition can metamorphose the whole body of the testimony into a showing that no such question of fact was raised, does not readily occur; the jury—not this court—was the judge of their credibility and the weight to be given to their testimony.

(2) The appellant's main contention upon this appeal was that there was no evidence sufficient to raise any question of fact as to negligence upon its part, although it did assign the jury's verdict to be so against the overwhelming weight of the testimony as to be clearly wrong; this court, however, did not exercise the only authority it had as to this latter presentment by remanding the case, undertaking rather to merely state such a finding; that finding is therefore abortive and need not be further referred to, since the Supreme Court will have jurisdiction to review the actual holding made, that there is no evidence. Belser v. Herman Hale Lumber Co. (Tex. Com. App.) 41 S.W.(2d) 208.

(3) Neither can the confession now by this court of its error upon the former appeal take from the whole body of the evidence upon the present trial the effect the court below gave it, notwithstanding the new contribution thereto of the two named witnesses for the appellant, the probative effect of the other evidence being precisely the same this time as formerly.

(4) Appellant's assertions to the effect that all the contractors were simultaneously engaged in the performance of their several contracts, that the record of the former trial did not show when or where appellant uncrated the machinery, and that the record of this trial undisputedly showed that appellant did not uncrate any of the machinery until a month after the appellee was injured, are all inept and not the truth of this case.

As affects the first of these, it becomes misleading in the face of the fact that there is no evidence whatever tending to show that any others than the appellee and one co-worker with him were in or near that part of the warehouse floor where the identified crating board that injured him lay between stacks of appellant's machinery, between the time this machinery was admittedly moved into the warehouse and that of the appellee's injury; as affects the second referred-to statement, the record—especially that received upon the former trial and reiterated upon this one— contained evidence from which it was at least a legitimate inference that appellant uncrated the machinery when it arrived and stored the same in the warehouse, its witness, the manager, Mr. Mitchell, having admitted that as the machinery came in it was placed in the warehouse by his men who uncrated that that was crated at that time and put tarpaulins upon it, adding that at that time he had given his employees instructions to clean up the rubbish after such uncrating; no subsequent changing of these statements—in the light of much time for afterthought—should have deprived the jury of a right to appraise them along with the subsequent corrections.

Wherefore the inaccuracy of the third statement quoted, supra, becomes apparent.

(5) This cause is not different from all others of its class in being subject to this well-settled rule, stated in McLaughlin v. Horn-Allen Co. (Tex. Civ. App.) 76 S.W. (2d) 226, at page 227: "The court is not authorized to direct a verdict, 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.' "

Applying that yardstick to the present record as a whole, it seems plain that the new testimony on the retrial tending to show merely that none of the appellant's machinery was uncrated until about a month after the appellee stuck the nail in his foot was really only cumulative of the defenses formerly made, hence should not be given the effect of obliterating the testimony, from which the Supreme Court before said: "It became a question of fact

to be determined, and the trial court and Court of Civil Appeals erred in holding as a matter of law that defendant in error was not liable."

The gravamen of the defenses upon both trials was to show that the nail came from some other kind of a piece of lumber than the crating board, in which appellant's machinery that was handled by its employees was admittedly incased; that having failed by the well-nigh undisputed showing that the offending board was of just such crating as this machinery was protected by, the inference of fact that appellant's employees had been responsible for its being in the place where the appellee stepped upon it was at least a legitimate one; any further showing, therefore, that it may have been left in that position and condition by appellant's employees, whether or not the general uncrating of its machinery had occurred until after the injury, would have still left the jury in a position to deduce that result as a legitimate inference from all the circumstances in evidence tending that way; among these is the fact, above adverted to, that no others than appellant's employees had been in that area, nor in position to have left the crating board lying there at that time.

From these views it follows that the rendition of this judgment was error.